OPINION
Defendant-appellant Stephen M. Keller appeals from his conviction and sentence for Possession of Marijuana in violation of R.C. 2925.11(A), a felony of the second degree, which carries a mandatory prison sentence of eight years. Keller argues that R.C. 2925.11(C)(3)(f), which imposes a mandatory eight-year prison term on an offender convicted of possessing an amount of marijuana in excess of twenty thousand grams, violates the constitutional prohibitions against cruel and unusual punishment found in the United States and Ohio constitutions. Keller also requests that we reconsider our previous decision in this matter, wherein we overruled the trial court's granting of his motion to suppress any evidence obtained by police on the grounds that their stop and subsequent search of his vehicle were unlawful.
We conclude that the penalty imposed by R.C. 2925.11(C)(3)(f) for the possession of an amount of marijuana in excess of twenty thousand grams is not grossly disproportionate to the gravity of the offense. We also decline to reconsider our prior decision overruling the trial court's grant of Keller's motion to suppress, pursuant to the "law of the case" doctrine. Accordingly, the judgment of the trial court is Affirmed.
 I
On the morning of May 27, 1999, Lieutenant Shaun Smart and Trooper Jon Payer of the Ohio State Highway Patrol were observing traffic from a vantage point in the center median on Interstate 70, between Dayton and the Indiana border. Smart and Payer noticed a U-Haul truck that appeared not to have a front license plate displayed, so they pulled out of the median strip to follow it. They also noticed that ahead of the U-Haul was a tractor trailer rig, which, itself, was being followed closely by a red, Pontiac Grand Am, determined later to have been driven by Keller. Smart ran a computer check on the U-Haul and the red Pontiac, and discovered they were both rentals.
Smart and Payer subsequently observed Keller's red Pontiac following the tractor trailer too closely, and saw the U-Haul drive onto the shoulder of the highway. The officers decided to make a stop of both vehicles, pulling the U-Haul over first, and then having Payer exit the cruiser to flag down the red Pontiac. However, when Smart saw the red Pontiac exit the highway, he abandoned his plan to pull both vehicles over, deciding, instead, to stop Keller's red Pontiac alone.
Finding the red Pontiac parked at a gas station, Smart walked up to Keller and told him he was being stopped for following the tractor trailer too closely. Smart entered Keller's driver's license number in his cruiser's computer. While Smart was awaiting a response, Payer contacted Trooper C. E. Wright of the Ohio Highway patrol, the handler of a drug-sniffing canine named Britt, telling him to come to their location. Wright soon arrived at the scene, and Britt "alerted" the officer to the possible presence of drugs near the car's gas tank and right rear passenger door by scratching and barking at those parts of the vehicle. Wright put his dog away and then searched Keller's car, finding more than ninety pounds of compressed marijuana in a duffel bag on the back seat. Keller was arrested for Possession of Marijuana in violation of R.C. 2925.11(A).
In June, 1999, Keller moved to suppress all evidence obtained by the police on the grounds that the stop and subsequent search of his vehicle were illegal. In July, 1999, the trial court sustained Keller's motion and ordered all evidence seized from Keller's vehicle suppressed from evidence. Pursuant to Crim.R. 12(J), the State appealed from the order suppressing the evidence. In January, 2000, we reversed the suppression order, finding both the stop and subsequent search of Keller's vehicle to have been lawful. See State v. Keller (Jan. 14, 2000), Montgomery App. No. 17896, unreported.
In March, 2000, Keller was tried by the bench on the charge of Possession of Marijuana. On May 23, 2000, the trial court filed an entry finding Keller guilty of the charge. On June 15, 2000, the trial court sentenced Keller to a mandatory eight-year term of incarceration, and suspended his driver's license for five years.
Keller appeals from his conviction and sentence for Possession of Marijuana.
 II
Keller's First Assignment of Error states:
 APPELLANT'S MANDATORY SENTENCE OF EIGHT YEARS VIOLATES STATE AND FEDERAL CONSTITUTIONAL PROVISIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT.
Keller asserts that R.C. 2925.11(C)(3)(f), which makes possessing a quantity of marijuana in excess of 20,000 grams a second-degree felony carrying a mandatory sentence of eight years, violates the prohibition against cruel and unusual punishment found in the United States and Ohio constitutions. Keller contends the penalty imposed is "grossly disproportionate" to the crime involved, and offends "a sense of justice and reasonableness, especially in comparison * * * to the sentences provided for more serious drugs such as cocaine and heroin." We find Keller's arguments unpersuasive.
The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Eighth Amendment violations are rare, and in order for a court to find one "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." State v. Weitbrecht (1999), 86 Ohio St.3d 368, 371, quoting McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 70. A tripartite analysis is used by reviewing courts to assess whether the penalty imposed is disproportionate to the offense committed:
 "First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions."
Weitbrecht, supra, at 371, quoting Solem v. Helm (1983), 463 U.S. 277,290-291.
A reviewing court need not reach the second and third prongs of the tripartite test except in the rare case where a threshold comparison of the crime committed and the sentence imposed lead to an inference that the two are grossly disproportionate. Weitbrecht, supra, at fn. 4, citing Justice Kennedy's concurrence in Harmelin v. Michigan (1991),501 U.S. 957, 1005. At oral argument in the case before us, Keller argued that Weitbrecht's reliance upon Justice Kennedy's concurrence in Harmelin was misplaced, because Justice Kennedy was in a minority on the issue. Be that as it may, the Ohio Supreme Court was unequivocal, in footnote 4 in Weitbrecht, in opining that the comparative interstate and intrastate analyses are "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."
Keller argues that the proper test is merely one of disproportionality, not gross disproportionality. We are, of course, obliged to follow the law as laid down by a decision of the Ohio Supreme Court, even if we might differ in our construction of United States Supreme Court decisions upon which the Ohio Supreme Court decision is based. In any event, the issue here may be more semantical than real, in view of the presumption of constitutionality attending legislative acts, and the corresponding duty of the judicial branch to give great deference to determinations made by the legislative branch concerning the appropriate penalties to attach to criminal conduct. While the judicial branch unquestionably has authority, pursuant to the cruel and unusual punishment provisions of the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution, to strike down a criminal penalty as being in violation thereof, that authority must be exercised cautiously, only in the most egregious circumstances. The separation of powers requires not only that the judicial branch be vigilant in the protection of its proper powers from usurpation by the legislative branch, but also that the judicial branch be appropriately deferential in its reluctance to invade those powers properly possessed by the legislative branch, of which the power to define offenses and to provide for the punishment of offenses is a long-established, core example. The test then, as Keller agreed during oral argument, is not whether we would, in our judgment and discretion, provide the same penalty for the offense, but whether we can say, after giving the legislative enactment the benefit of the presumption of constitutionality to which it is entitled, that the penalty the legislature has provided is so disproportionate as to shock the sense of justice of the community.
R.C. 2925.11(C)(3)(f) makes the possession of more than 20,000 grams of marijuana a felony of the second degree.[1] While use of marijuana, a Schedule I hallucinogen (see R.C. 3719.41[C][19]), is often considered to be a less serious form of substance abuse, the drug causes potentially dangerous effects, including impairing short-term memory, judgment, and the ability to follow moving objects. R.C. 3719.41(C)(19); State v. Williams (May 30, 1991), Cuyahoga App. No. 58549, unreported. Furthermore, the General Assembly could rationally conclude that an offender who possesses 20,000 or more grams of marijuana — and Keller possessed more than twice that amount — is not a mere possessor of the drug for personal use, but is involved in the chain of distribution of that illegal substance, which will affect numerous others. In light of these circumstances, we cannot say that the eight-year mandatory prison sentence imposed by R.C. 2925.11(C)(3)(f) is grossly disproportionate to the gravity of the offense, or shocking to the sense of justice of the community.
Keller invites us to compare the mandatory eight-year penalty for the second degree felony offense of marijuana possession with the penalty for the second degree felony offense of cocaine possession, which permits the imposition of a much less severe sentence. However, we agree with the State that a more appropriate comparison is between the highest possible offense for marijuana possession — the second degree felony offense of which Keller was convicted — and the highest possible offense for cocaine possession — a first degree felony offense mandating a minimum of ten years' imprisonment, with a possible additional penalty of anywhere from one to ten additional years' imprisonment if the offender qualifies as a major drug offender. R.C. 2925.11(C)(4)(f). Against the background of this comparison, it appears that the General Assembly has dealt less harshly, not more, with the worst marijuana offenders.
This same issue has been addressed in State v. Powell (Dec. 31, 1998), Lake App. No. 97-L-253, unreported, where the court found that R.C.2925.11(C)(3)(f) does not constitute cruel and unusual punishment:
 R.C. 2925.11(C)(3)(f) sets forth a reasonable progression of harsher sentences for possession of a larger quantity of marijuana. Moreover, although it constitutes the maximum sentence for a second degree felony, this sentence is not disproportionate to other crimes of similar stature.
 Furthermore, this sentence is not disproportionate to sentences for similar crimes in other jurisdictions. For example, in Illinois, the sentence for possession of more than 5,000 grams of marijuana is a determinate sentence with a minimum of four to a maximum of fifteen years of imprisonment. Ill.Stat.Ann. Chapter 720, Section 550/4(g); and Chapter 730, Section 5/5-8-1(a)(4). Thus, in Illinois, appellant's sentence could have been nearly double his sentence in Ohio for possession of substantially less marijuana than appellant possessed in the case sub judice [i.e., 34,615.5 grams]. [Footnote omitted.] Additionally, as stated in Harmelin, the mere mandatory nature of appellant's sentence does not infringe on the rights guaranteed by the Eighth Amendment. Therefore, appellant's claim that R.C. 2925.11(C)(3)(f) violates the constitutional prohibition against cruel and unusual punishment is not well-founded.
We agree.
Keller's First Assignment of Error is overruled.
 III
Keller's Second Assignment of Error states:
 APPELLANT WAS DENIED A FAIR TRIAL BY REASON OF THE USE OF ILLEGALLY SEIZED EVIDENCE AS A BASIS FOR HIS CONVICTION.
Keller requests that we reconsider our prior decision in State v. Keller, supra, wherein we reversed the trial court's order suppressing evidence, because we concluded that the police did not act unlawfully when they stopped and subsequently searched Keller's vehicle. We decline to do so.
Under the "law of the case" doctrine, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. "[T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Id. However, the doctrine is considered to be a rule of practice rather than a binding rule of substantive law; therefore, it will not be applied where it would be unjust to do so. Id.
Keller argues that "due process and the right to a fair trial" require that we revisit our decision in State v. Keller, supra. Keller contends that a careful reading of the trial court's decision shows that the trial court actually rejected Lieutenant Smart's claim that a traffic violation had occurred which justified the stop of Keller's vehicle. We disagree.
The pertinent passage from the trial court's decision reads as follows:
 It would seem that once the Texas license plate [on Keller's red Pontiac] was spotted, Lieutenant Smart's instincts alerted him that narcotics could be aboard the vehicle. He then traveled with the vehicle noticing strange behavior. He waited until the Defendant began traveling too close to the vehicle [ahead of it] to finally stop the Defendant. At this time it would appear that there was no reason to stop the Defendant other than a hunch of what he may find in the vehicle. Further, Lieutenant Smart had no reason to believe that criminal activity was occurring as stated in Terry v. Ohio to stop the Defendant. (Emphasis added.)
The trial court did find that a traffic violation occurred, as Smart had testified, when it expressly found that "the Defendant began traveling too close to the vehicle[.]" See State v. Keller, supra, citing R.C. 4511.34, requiring a driver to leave enough space between his car and the vehicle ahead so that another vehicle "may enter and occupy such space without danger." The trial court indicated that Smart's stop of the vehicle for the traffic violation was a mere pretext for a search for drugs, and, therefore, unlawful. Although we expressed sympathy with the trial court's holding, we nevertheless felt compelled to reverse on the basis of Dayton v. Erickson (1996), 76 Ohio St.3d 3, in which it was held that a police officer's stop of a vehicle based on probable cause that a traffic violation has occurred or is occurring is not constitutionally prohibited "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at syllabus. See State v. Keller, supra.
Therefore, Keller has not provided us with any compelling reason for ignoring the law of the case doctrine here, and we decline to do so.
As indicated, the law of the case doctrine promotes the important goals of giving finality to decisions and preserving scarce judicial resources. If Keller had filed a timely application for reconsidering his appeal, pursuant to App.R. 26(A), and if this court had agreed with him and reinstated the trial court's ruling granting his motion to suppress, then the costs of trying Keller on the Possession of Marijuana charge could have been avoided. Likewise, the expense of the Possession of Marijuana trial could have been avoided had Keller persuaded the Ohio Supreme Court to accept our earlier decision for review and then had he further persuaded the Ohio Supreme Court to reverse that decision. He did neither. Furthermore, while Keller was entitled to seek an "enlargement of time" in order to file an application for reconsideration of our prior decision in State v. Keller, supra, he has failed to show any "extraordinary circumstances" that would have prevented him from filing an application for reconsideration in a timely manner. See App.R. 14(B).
Accordingly, Keller's Second Assignment of Error is overruled.
 IV
Both of Keller's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 ________ FAIN, J.
GRADY and YOUNG, JJ., concur.
[1] Under the current version of the statute, possession of an amount of marijuana that equals or exceeds 20,000 grams is a felony of the second degree.